UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gregory Vanes,                                          Civ. No. 18-2376 (JNE/BRT)

      Petitioner,

v.                                                       **REPORT AND RECOMMENDATION**

Warden R. Marques,

      Respondent.

Gregory Vanes, Reg. No. 08202-028K4, Federal Correctional Institution, P.O. Box 1000, Sandstone, MN 55072, *pro se* Petitioner.

Andrew S. Tweeten, Esq., Assistant United States Attorney, counsel for Respondent.

In this 28 U.S.C. § 2241 action, Petitioner Gregory Vanes alleges that the Bureau of Prisons ("BOP") violated his constitutional rights by placing him on a medical hold, thus preventing Petitioner from being placed in a Residential Reentry Center ("RRC"). (Doc. No. 1, Habeas Pet.) Since this case was filed, however, Petitioner's medical hold was removed and Petitioner was placed in RRC, rendering Petitioner's claim moot. For this reason and for the additional reasons set forth herein, this Court recommends that this action be dismissed.

**I.  Background**

    **A.  Petitioner's Conviction and Release Date**

Petitioner is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). (Doc. No. 13, Declaration of Lance Molis

("Molis Decl.") ¶ 4, Ex. A at 2.) He is serving a 188-month sentence for Conspiracy to Distribute in Excess of 500 Grams of Methamphetamine (Mixture) and Distribution of Less than 50 Grams of Methamphetamine (Actual) in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*Id.*) Petitioner has a projected release date of January 28, 2019, via an early release pursuant to 18 U.S.C. § 3621(e) for successful completion of a Residential Drug Abuse Program ("RDAP"). (*Id.*)

### B.   Residential Reentry Center and Home Confinement

Pursuant to law and BOP policy, inmates can be placed in an RRC as a pre-release placement at the end of their sentences. (Molis Decl. ¶ 5.) RRCs provide a safe, structured, and supervised environment, as well as employment counseling, job placement, financial management assistance, and other programs and services. (*Id.*) RRCs help inmates gradually rebuild their ties to the community and facilitate supervising activities during this readjustment period. (*Id.*)

Congress has given the BOP the discretion to determine when or whether an inmate should be placed in an RRC. In the Second Chance Act of 2008 ("SCA"), Congress increased the maximum allowable time for such placement by providing the BOP authority to grant inmates "to the extent practicable" up to twelve months in a pre-release RRC placement at the end of their sentences. 18 U.S.C. § 3624(c)(1); (Molis Decl. ¶ 6). Additionally, either as a portion of their pre-release RRC placement or in lieu of placement in an RRC, the SCA authorizes the BOP to place inmates on home confinement for the shorter of ten percent of their term of imprisonment or six months at the end of their sentence. 18 U.S.C. § 3624(c)(2); (Molis Decl. ¶ 6).

An inmate's request for RRC or home confinement placement must receive individualized consideration of the following criteria: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) of Title 28. *See* 18 U.S.C. § 3621(b)(1)–(5); (Molis Decl. ¶ 7).

At the institutional level, an inmate's Unit Team will review him for up to a one year pre-release RRC placement and/or the appropriate length of home confinement approximately seventeen to nineteen months before his projected release date. (Molis Decl. ¶ 9.) The primary factors considered are those set forth in § 3621(b)(2)–(5), which focus on characteristics unique to the individual inmate and of which the Unit Team has unique knowledge and insight. (*Id.*) The BOP stresses to Unit Team staff that although all inmates are eligible for up to twelve months in a pre-release RRC placement under the SCA, not all inmates are appropriate for such a placement. (*Id.*)

In addition to basic needs, such as securing identification, employment, and housing, Unit Team staff will determine other needs an inmate has that can be met at the RRC during a potential pre-placement. (*Id.* ¶10.) An additional need for many inmates is community drug programming. (*Id.*) Congress has directed the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance abuse addiction or abuse." 18 U.S.C. § 3621(b). The

3

BOP must provide residential substance abuse treatment for all eligible prisoners, subject to available funding. 18 U.S.C. § 3621(e)(1). A prisoner is "eligible" for RDAP if he is "determined by the [BOP] to have a substance abuse problem," and he is "willing to participate in a residential treatment program." 18 U.S.C. § 3621(e)(5)(B)(i) and (ii). To successfully complete RDAP, inmates must complete a minimum of 120 days in a Transitional Drug Abuse Treatment ("TDAT") program while in community confinement. 28 C.F.R. §§ 550.53(a)(3), 550.56; (Molis Decl. ¶ 10). The BOP may, as an incentive for successful completion of RDAP, reduce the inmate's sentence by up to one year. 18 U.S.C. § 3621(e)(2). If the inmate cannot fulfill the TDAT portion of RDAP before his provisional § 3621(e) release date, his provisional release date can be adjusted by "the least amount of time necessary to allow inmates to fulfill their treatment obligations." 28 C.F.R. § 550.55(c)(3); (Molis Decl. ¶ 10).

After an inmate's Unit Team has considered the inmate's individual needs and factors under § 3621(b) and the institution's warden has approved their recommendation, the institution's recommendation is forwarded to the Residential Reentry Manager's ("RRM") office overseeing the proposed RRC. (Molis Decl. ¶ 11). RRM staff finalize the recommendation after considering the resources of the facility contemplated. § 3621(b)(1); (Molis Decl. ¶ 11). RRM staff are trained to not unilaterally deny pre-release RRC referrals or reduce a placement recommendation unless there are no available RRC beds within a reasonable distance for the inmate's specific date or timeframe. (Molis Decl. ¶ 11).

### C.   Petitioner's Pre-Release Placement Determination

Unit Team staff reviewed Petitioner for pre-release RRC and home confinement placement on November 20, 2017. (Molis Decl. ¶ 12, Ex. B.) The Warden of FCI Sandstone approve the Unit Team's recommendation that Petitioner be placed in an RRC near Indianapolis, Indiana, on June 5, 2018. (*Id.*, Ex. B at 1.) In reviewing his history and characteristics, Unit Team staff determined that Petitioner completed his financial responsibility payments; participated in educational and vocational programs, counseling programs, RDAP, and the release preparation program; and maintained family ties via phone, letter, and emails. (*Id.*, Ex. B at 2–4, 6, 8, 10.) The Unit Team also reviewed the nature and circumstances of Petitioner's offense and the statement by the sentencing court recommending his imprisonment at FCI Pekin. (*Id.*, Ex. B at 2–3.) The Unit Team decided that Petitioner was ineligible for home confinement due to his unstable release plans. (*Id.* at 1, 13.)

### D.   Petitioner's Medical Hold

Before his RRC placement could be finalized by the RMA, Petitioner was placed on a medical hold because he was diagnosed with a small pulmonary embolus ("PE") in his right arm. (*Id.* ¶ 13; Doc. No. 14, Declaration of Dr. Megan Shaw ("Shaw Decl.") ¶ 7.) The hold was placed to ensure that Petitioner received necessary follow-up appointments and treatment at FCI Sandstone. (Shaw Decl. ¶ 11.) Eventually, it was determined that Petitioner was stable on blood thinner medication, and the medical hold was lifted on August 17, 2018. (Molis Decl. ¶ 13; Shaw Decl. ¶ 19.) The BOP approved an RRC placement date of September 27, 2018, which will allow Petitioner to complete

the TDAP component of RDAP before his projected early release date of January 28, 2019. (Molis Decl. ¶ 13, Ex. A at 2.)

## II. Analysis

Petitioner argues that the BOP improperly maintained his medical hold and denied his RRC placement without proper review, in violation of statutory law and equal protection. (Doc. No. 3, Pet'r's Mem. 10–18.) Petitioner also argues that he is being subjected to cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* at 18–26.) Respondent argues that this action should dismissed for lack of subject-matter jurisdiction and also on the merits. (*See* Doc. No. 12, Resp't's Mem.)

### A. Subject-Matter Jurisdiction

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 is the appropriate vehicle when, as here, a federal petitioner "challenges the execution of a sentence or the length or duration of his confinement." *Dozier v. United States*, Case No. 14-cv-4248 (JNE/HB), 2015 WL 9805752, at *2 (D. Minn. Nov. 30, 2015). The Court however lacks subject-matter jurisdiction over Petitioner's claim that BOP officials are acting in violation of the Eighth Amendment. *See Spencer v. Haynes*, 774 F.3d 467, 470–71 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) ("If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy."). Petitioner's deliberate indifference claim must be brought in a separate civil rights action. *See Carlson v. Green*, 446 U.S.

6

14, 18–20 (1980) (recognizing a cause of action under *Bivens* for an alleged Eighth Amendment violation).

Moreover, while filing an action under § 2241 is the correct way to challenge RRC placement, Petitioner's claim challenging his RRC placement is now moot because Petitioner's medical hold was lifted and his RRC placement began on September 27, 2018. *See Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (finding that claims in § 2241 action challenging denial of RRC placement became moot after petitioners were placed in RRCs "because the relief they seek has been granted").

Finally, even if this action were not considered moot, courts in this district have held 18 U.S.C. § 3625 precludes judicial review of the BOP's discretionary decisions under § 3621. *See, e.g.*, *Crawford v. Nicklin*, No. 13-cv-2462 (JRT/SER), 2014 WL 538699, at *7 (D. Minn. Feb. 11, 2014) ("Courts in this District have also found § 3625 precludes judicial review of BOP discretionary decisions under § 3621."); *Davis v. English*, No. 12-cv-1483 (JNE/LIB), 2013 WL 1149526, at *6 (D. Minn. Feb. 27, 2013); *Rios v. Fisher*, No. 10-cv-4020 (PJS/TNL), 2012 WL 2814338, at *3 (D. Minn. June 19, 2012).

For all of these reasons, this action should be dismissed for lack of subject-matter jurisdiction.

### B. Petitioner's Claims

If the Court could exercise subject-matter jurisdiction over Petitioner's claims, they should be dismissed on their merits.

Petitioner's primary claim is that the BOP violated his right to equal protection under the Constitution because other similarly situated prisoners who take blood thinners have been provided RRC placements. (Pl.'s Mem. 1, 10–18.) As recounted above, the BOP conducted an individualized assessment of the factors set forth in § 3621(b). The BOP's determination that Petitioner's medical condition precluded RRC placement was a permissible exercise of discretion, just as the subsequent decision to lift the medical hold was also a permissible exercise of discretion. *See Miller*, 527 F.3d at 758 (affirming denial of RRC placement when § 3621(b) factors are considered in good faith); *Crawford*, 2014 WL 538699, at *6 (stating the BOP must consider halfway house request "in good faith" and under the factors in § 3621(b)). Given the consideration of these factors, Petitioner cannot demonstrate that the BOP "intentionally treated [him] differently than others who are similarly situated and that no rational basis existed for the difference in treatment," as is required to succeed on an equal protection claim not involving a suspect class or fundamental right. *Higgins Elec., Inc. v. O'Fallon Fire Protection Dist.*, 813 F.3d 1124, 1129 (8th Cir. 2016) (discussing "class-of-one" equal protection claim). As one court explained, the "individual considerations" set forth in § 3621(b) "will generally provide a rational basis for different outcomes." *Flores v. Berkebile*, No. 3:07-CV-0778-B ECF, 2008 WL 623385, at *17 (N.D. Tex. Mar. 5, 2008).

Plaintiff also complains that the medical hold will result in him losing the opportunity to have his sentence reduced. (Pl.'s Mem. 2, 9.) This claim is without merit because Petitioner's projected release date is still January 28, 2019, the same date that

was initially recommended before the medical hold. (*See* Molis Decl. Ex. B at 2, Ex. A at 2.) In any event, Petitioner does not have a statutory or constitutional right to participate in RDAP or to an early release. *See Giannini v. Fed. Bureau of Prisons*, 405 F. App'x 96, 97 (8th Cir. 2010) ("[N]either the Due Process Clause nor 18 U.S.C. § 3621(e)(2)(B) creates a liberty interest in receiving a sentence reduction upon completion of a Bureau of Prisons residential drug abuse program."); *Reeb v. Thomas*, 636 F.3d 1224, 1228 n.4 (9th Cir. 2011) ("Reeb also cannot prevail on his due process claim because inmates do not have a protected liberty interest in either RDAP participation or in the associated discretionary early release benefit.").

### III. Recommendation

For the reasons set forth above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.


Date: October 17, 2018.   *s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).